UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| PEREZ D. BASS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 18-1237-JDT-cgc |
| | ) | |
| CHERYL TAYLOR, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER TO MODIFY THE DOCKET, DISMISSING AMENDED COMPLAINT,
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

On June 12, 2019, the Court entered an order dismissing Plaintiff Perez D. Bass's *pro se* complaint under 42 U.S.C. § 1983 and granting leave to file an amended complaint. (ECF No. 10.) On July 2, 2019, Bass filed a motion to amend, to which he attached his amended complaint. (ECF No. 11.) The Clerk shall record the following additional Defendants: Sergeant First Name Unknown (FNU) Jones, Whiteville Correctional Facility (WCF) Grievance Chairman; Lieutenant FNU Scott; Medical Correctional Officer (C/O) FNU Cleaves; Vashti McKinney, WCF Title VI Coordinator; Toyos Eye Care; and C/O FNU Traylor-Allen.[1]

Bass reiterates many of the allegations regarding his eye condition, need for specialty contact lenses, and denial of proper treatment. His primary allegations are directed at Defendant

---

[1] The list of Defendants in the amended complaint, (*see* ECF No. 11 at PageID 81-83), does not include several Defendants who were named in the original complaint: FNU Wuni, Andrew Crothers, Tony Parker, James Bellar; Jimmy Sain, Cynthia Casagrande, and Dr. Larry Bloomingburg. The Clerk is DIRECTED to terminate those Defendants. The Clerk also is DIRECTED to modify the docket to include the first name of Defendant Dr. Robert Bishop.

Dr. Bishop, who Bass alleges prescribed him prosthetic glasses, ibuprofen, and redness reliever, none of which offered him any relief. (ECF 11-1 at PageID 84-85, 88.) Bishop allegedly told Bass that he had requested replacement equipment at WCF to treat inmate eye issues but had not yet received it. (*Id.* at PageID 84, 88.) Bass alleges that an outside specialist recommended a cornea transplant, but Bishop told Bass that the glasses and ibuprofen "was all he could do." (*Id.* at PageID 84.) Bass eventually did receive contact lenses, but he alleges "they were not my original kind that sat off my pupil" and only caused him more pain. (*Id.* at PageID 88.) He reported the issue to Bishop, who allegedly told Bass "there's nothing else that he could do but give me Ibuprofen." (*Id.*) Bass saw a different outside specialist, who recommended antibiotic eye drops. (*Id.* at PageID 90.) He also was seen at Toyos Eye Care, where a cornea transplant again was recommended. (*Id.*) Bishop, however, allegedly told Bass that those recommendations were "denied by CoreCivic medical chief and TDOC." (*Id.*)

Bass alleges that Defendant Nurse McCalvin told him to "stop filling out sick calls" because he would not be receiving the recommended treatment. (*Id.* at PageID 85.) McCalvin also allegedly told Bass that Defendant Preston, Medical Director, had denied Bass's request for prescription contact lenses. (*Id.* at PageID 86.) However, Bass also alleges that Preston told Bass he "had the one condi[t]ion where I needed contacts." (*Id.*) Bass also alleges that McCalvin did not reorder his "mental health med's like she was suppose to [sic]." (*Id.* at PageID 88.)

Bass alleges in passing that Defendant Nurse Stokes on one occasion refused to take his vital signs while Bass was having an anxiety attack. (*Id.* at PageID 87.) Bass also alleges that on one occasion he attempted to talk with Defendant Corman, also identified as a Medical Director, who simply said "he has nothing else for me." (*Id.*) Bass alleges that on at least two occasions,

an officer called medical for Bass when he was having an anxiety attack, but unnamed "medical staff" refused to see Bass or tell him who was working. (*Id.*)

Bass alleges that, when returning to his cell after being denied a medical visit, Defendant Lt. Scott refused to allow him to return to his unit. (*Id.* at PageID 89.) Defendant Cleaves, Medical C/O, allegedly told Scott that Bass "had a lawsuit on medical." (*Id.*) Scott allegedly threatened to "spray [Bass] with mas [sic]." (*Id.*) Bass alleges that Scott and Cleaves "proceeded to converse and conspired to retaliate against me for filing a lawsuit and treating me with disparate treatment." (*Id.*) Scott then ordered Defendant C/O Traylor-Allen to lock down Bass, even though, Bass alleges, around twenty other inmates were "out of place." (*Id.*) The next morning, Traylor-Allen verified that Bass had permission to see medical, even though he had been denied a visit the previous evening. (*Id.*)

Bass alleges that Defendant Preston discriminated against him because of his race. (*Id.* at PageID 91.) Bass alleges that a different inmate, who is white, "was approved and treated for 2 sep[a]rate eye operations." (*Id.*) However, Bass, who is black, has been denied the cornea transplant twice recommended for his keratoconus. (*Id.*)

Bass sues the Defendants in their official and individual capacities. (ECF No. 11 at PageID 82.) He does not specify the relief he seeks.

The legal standards for assessing the claims in an inmate's complaint were set forth in the prior order of dismissal, (ECF No. 10 at PageID 72-73), and will not be reiterated here.

Bass's amended complaint fails to state a claim against any Defendant in his or her official capacity. As discussed in the previous order, Bass cannot sue the TDOC. (ECF No. 10 at PageID 73-74.) In his amended complaint, Bass again does not allege that he suffered an injury because of an unconstitutional policy or custom of the City of Whiteville, CoreCivic, or Corizon

3

Health. He therefore fails to state a claim against any of these Defendants or employees of these Defendants in their official capacities. (*See id.* at PageID 74-75.)

Bass's amended complaint is devoid of any allegations against Defendants Chapman, Jones, McKinney, or Taylor. When a complaint fails to allege any action by a Defendant, it necessarily fails to "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). His general allegations against "the medical staff" also fail to state a claim. *See Gray v. Weber*, 244 F. App'x 753, 754 (8th Cir. 2007) (affirming dismissal of inmate's § 1983 complaint alleging denial of medical care against defendants identified "only collectively as 'medical staff'").

Bass's amended complaint fails to state an Eighth Amendment claim against Defendant Bishop. Bass alleges that Bishop was unable to provide the treatment Bass wanted but did prescribe prosthetic glasses, ibuprofen, and redness reliever. At most, Bass's allegations amount to a disagreement about treatment. Disagreement about the course of treatment does not present a proper claim under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."). Even if Bishop was negligent in his treatment to Bass, neither negligence nor medical malpractice amount to a constitutional violation. *See Farmer v. Brennan*, 511 U.S. 825, 835-36 (1994).; *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

Nor does Bass state an Eighth Amendment claim against Defendants McCalvin, Chalk, or Stokes. Bass alleges McCalvin failed to reorder his "mental health med's" for his anxiety attacks,

4

Chalk failed to reschedule an appointment to address the attacks, and Stokes on one occasion did not take his vitals during an anxiety attack. Bass does not allege that McCalvin intentionally refused to order his anxiety medication. At most, he alleges that McCalvin negligently failed to reorder the medication that he had been taking. That negligence does not amount to a constitutional violation. *See Farmer*, 511 U.S. at 835–36. Although Bass does have a constitutional right to psychological treatment, *see Clark-Murphy v. Foreback*, 439 F.3d 280, 292 (6th Cir. 2006) (citing cases), he does not have a right to have someone schedule his appointments for him. Bass does not allege that he was unable to receive treatment for his anxiety attacks without Chalk making the appointment. Moreover, the PLRA bars prisoner suits "for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e); *see Braswell v. Corr. Corp. of Am.*, 419 F. App'x 522, 626 (6th Cir. 2011). Bass does not allege that he suffered any injury from McCalvin, Chalk, or Stokes's alleged inadequate treatment of his anxiety attacks.

Bass alleges that Defendant Corman refused to discuss his medical treatment with him on one occasion in August 2018. (ECF No. 11-1 at PageID 87.) However, the exhibits that Bass attached to his amended complaint, and to which he refers throughout his amended complaint, show Corman wrote to Bass in January 2019 about his treatment and notified Bass that he was on a list to be seen for treatment on February 5, 2019. (ECF No. 11-2 at PageID 96.) He also explained to Bass why the recommendation for surgery had been denied. (*Id.* at PageID 102.) Bass's allegations therefore do not show that Corman was deliberately indifferent to his medical needs.

Bass alleges that his denial of treatment was based on his race because a white inmate received two eye operations, yet he has consistently been denied his recommended cornea

5

transplant. The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1. "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. Of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir. 2006)).

Bass fails to state an Equal Protection claim. Although he alleges that another inmate of a different race received two recommended eye operations, he does not describe those operations or allege that he and the other inmate had the same condition or treatment recommendation. *See Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 F. App'x 826, 836 (6th Cir. 2009) (noting that to show *prima facie* case of disparate treatment, plaintiff must allege that he was "treated differently . . . in all material respects"). Bass's allegations are insufficient to suggest that the denial of his treatment had anything to do with his race.

Bass's conclusory allegation that Defendants Scott and Cleaves conspired to retaliate against him fails to state a claim. *See Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004) ("[V]ague and conclusory allegations that are unsupported by material facts are not sufficient to state a § 1983 claim."). Bass also alleges in passing that he was denied access to the court. However, Bass does not allege any injury from the purported denial of access to the courts. *See Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001) (citation omitted) (explaining that, to have standing to pursue a First Amendment claim that he was denied access to the courts, "a prisoner must show prison officials' conduct inflicted an 'actual injury,' i.e., that the conduct hindered his efforts to

pursue a nonfrivolous legal claim"). He therefore fails to state a First Amendment claim that he was denied access to the courts.

Bass alleges that his grievances to, or about, Defendants Preston, Walker, and Bishop went unanswered. (ECF No. 11-1 at PageID 86.) "There is no inherent constitutional right to an effective prison grievance procedure." *See LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)). A § 1983 claim therefore cannot be premised on contentions that the grievance procedure was inadequate. *Id.*

In conclusion the Court DISMISSES Bass's amended complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Leave to further amend is DENIED.

Pursuant to 28 U.S.C. § 1915(a)(3), the Court must also consider whether an appeal by Bass in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith. Therefore, it is CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Bass would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Bass nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain*, 716 F.3d at 951. *McGore* sets out specific procedures for implementing the PLRA, §§ 1915(a)-(b). Therefore, Bass is instructed that

if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in the PLRA and *McGore* by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Bass, this is the first dismissal of one of his cases as frivolous or for failure to state a claim. This strike shall take effect when judgment is entered. *See Coleman v. Tollefson*, 135 S. Ct. 1759, 1763-64 (2015).

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE